DONALD J. McCRANN ET AL. *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF BLOOMFIELD ET AL.

HOUSE, COTTER, THIM, RYAN and SHAPIRO, Js.

Argued March 4—decided April 13, 1971

*Peter J. Preisner,* for the appellants (plaintiffs).

*Richard Goodman,* for the appellee (named defendant).

*Arthur M. Nassau,* for the appellee (defendant Interfaith Homes, Inc., et al.).

RYAN, J. The redevelopment agency of the town of Bloomfield, hereinafter referred to as the Agency, made application to the town plan and zoning commission of the town of Bloomfield for site plan approval for forty-six units of housing for the elderly which was proposed to be constructed on a 2.2-acre site by Interfaith Homes, Inc., hereinafter referred to as Homes. The plans submitted provided for the construction of four separate buildings facing an access road twenty-six feet wide, which begins at Mountain Avenue and terminates in a parking lot with two buildings on each side of the road. Thirty-one parking spaces are provided. On July 24, 1969, the commission held a public hearing on the application and on September 11, 1969, the commission denied it. Thereafter, the Agency applied for approval of the application on the basis of changes in the plans and on October 9, 1969, the commission held a public hearing on this application. On October 23, 1969, the commission approved the site plan. The plaintiffs, who own land abutting the subject property, appealed to the Court of Common Pleas which dismissed the appeal and rendered judgment for the defendants. The plaintiffs have appealed to this court. They have made numerous assignments of error and claim, in substance, that the site plan violated the Bloomfield zoning regulations and that improper procedures used by the commission render its approval of the site plan void.

The plaintiffs urge that proper notice of the public hearing on the site plan application was not given. Section 210 (B) of the zoning regulations requires

that such an application be "submitted to the Commission in the manner required for a change of zone" and that it include a site plan. Section 210 (E) of the regulations provides that the commission "shall hold a public hearing . . . with due notice as provided by the General Statutes of the State of Connecticut for a change in the Zoning Regulations." Section 8-3 of the General Statutes provides the notice requirements for public hearings to consider changes in the zoning regulations. Advertisement in a newspaper is required to give notice of the time and place of the hearing, and there is a further proviso that "a copy of . . . [the] proposed regulation or boundary shall be filed in the office of the town, city or borough clerk." The plaintiffs do not claim that they failed to receive notice of the time and place of the hearing or that such notice was not properly advertised in a newspaper in accordance with the statute. They urge that the Agency failed to file the site plan with the town clerk of Bloomfield, and that this was a jurisdictional defect which rendered the actions of the commission void. The parties have stipulated that the proposed site plan was filed with the commission and the building inspector prior to October 9, 1969, the date of the hearing, and that it was not filed with the town clerk.

Section 210 (E) adopts the notice provisions for public hearings of § 8-3 of the General Statutes. The statute does not deal with site plans and there is nothing contained therein to indicate that site plans should be filed with the town clerk. The only requirement for filing documents with the town clerk under the provisions of § 8-3 is for a "proposed regulation or boundary." Since neither of these was involved in this hearing that portion of the statute was not applicable, nor was it the intention of § 210 (E) of

the regulations to require such a filing. The plaintiffs make no claim that they were unable to gain access to the site plan in time to contest its approval at the hearing on October 9, 1969. In fact, it is obvious from the manner in which the plaintiffs' attorney conducted himself at the hearing that he was thoroughly familiar with the site plan. The notice requirements of the zoning regulations were not violated.

The plaintiffs urge that the plot of land consisting of 2.2 acres was improperly zoned B-3 by the defendant commission on July 15, 1968, and that a B-3 use should not be permitted on it. Section 8-9 of the General Statutes provides that appeals from a planning and zoning commission may be taken in the manner provided in § 8-8. Section 8-8 authorizes appeals to be taken within fifteen days from the date when notice of the decision of the commission is published. The plaintiffs seek to avoid the fifteen-day limitation period for appeals by invoking the rule applied in *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 252, 83 A.2d 201. In that case a planning board changed the zoning boundary without giving proper notice of the hearing. We held that this constituted a jurisdictional defect and rendered the action of the board void. In the present case there is nothing to indicate a jurisdictional defect in the action of the commission. No appeal was taken by the plaintiffs within the statutory period pursuant to §§ 8-8 and 8-9. They have no standing to attack in the present appeal the validity of the commission's action in 1968.

The plaintiffs assign error in the conclusion of the trial court that the site plan was not a subdivision. It is their position that this permitted the Agency and Homes to ignore the subdivision regulations,

thereby avoiding requirements which the proposed project would be unable to meet. Subdivision is defined in § 8-18 of the General Statutes.[1] On analysis of the statute, its clear and unambiguous language requires: (1) The division of a tract or parcel of land into three or more parts or lots, and (2) for the purpose, whether immediate or future, of sale or building development. The site in question was created by combining two lots to make one parcel of 2.2 acres. There was no division of a tract into three or more parts or lots and in the absence of this statutory requirement there was no subdivision. The conclusion of the trial court was correct.

The plaintiffs urge that the action of the commission was in violation of the zoning regulations in many respects. They claim that the site plan does not provide the requisite number of parking spaces in accordance with the regulations; that it provides for the construction of buildings with less than the rear-yard requirements of the regulations; that it fails to make adequate provision for the disposition of surface and flood waters; that it fails to provide for appropriate traffic circulation and access; and that it fails to provide adequate safeguards to adjacent properties. In applying their zoning regulations to a particular situation, the commission is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. *Toffolon* v. *Zoning Board of Appeals*, 155 Conn. 558, 560, 236 A.2d 96; *Connecticut Sand & Stone Corporation* v. *Zoning Board of Appeals*, 150 Conn. 439, 442, 190

---

[1] "[Sec. 8-18. DEFINITIONS.] . . . '[S]ubdivision' means the division of a tract or parcel of land into three or more parts or lots for the purpose, whether immediate or future, of sale or building development."

A.2d 594. This court cannot substitute its discretion for the discretion enjoyed by the commission. *Belknap* v. *Zoning Board of Appeals,* 155 Conn. 380, 384, 232 A.2d 922; *Zieky* v. *Town Plan & Zoning Commission,* 151 Conn. 265, 267, 196 A.2d 758. When reviewing the actions of the commission to determine if its findings complied with the standards set out in the regulations, we are not compelled to indulge in a microscopic search for technical infirmities. *Parish of St. Andrew's Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 357, 232 A.2d 916; *Silver Lane Pickle Co.* v. *Zoning Board of Appeals,* 143 Conn. 316, 319, 122 A.2d 218. The determination of what the public interest requires is within the discretion of the commission. *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 595, 145 A.2d 597; *Winslow* v. *Zoning Board,* 143 Conn. 381, 391, 122 A.2d 789. It is only where the local zoning authority has acted arbitrarily or illegally and thus abused the discretion vested in it that the courts can grant relief on appeal. *Stiles* v. *Town Council,* 159 Conn. 212, 219, 268 A.2d 395.

The site plan provides thirty-one parking spaces for forty-six dwelling units. Section 407 (3) of the regulations requires one parking space for each dwelling unit for buildings used for residence. Section 407 (8) allows a modification of this rule if the commission finds that the "proposed use is of such peculiar nature that the requirements for parking do not conform to the intent of the regulations and would clearly not require the parking spaces proposed." The commission heard evidence to the effect that thirty-one parking spaces would be more than adequate under both the F. H. A. requirements for housing for the elderly and the regulations of the state department of community affairs for hous-

ing. The finding of the commission that this type of housing does not require the same number of parking spaces normally required for residential housing, its modification of the parking rules and its acceptance of the proposed number of parking spaces in the site plan as adequate, were not unreasonable. In the minutes of the executive session of the commission there is a finding that "[i]t was generally agreed that there are more than sufficient parking spaces for the project." The claim of the plaintiffs that this finding lacked the specificity required by the regulations cannot be sustained.

Under the provisions of § 210 (C) of the regulations a ten-foot side yard and a twenty-foot rear yard are required. The building nearest the plaintiffs' property complies with the side-yard requirement. The commission treated the rectangular piece of land as having a front yard along Mountain Avenue with side and rear yards determined accordingly. The easterly boundary abutting the plaintiffs' property would, therefore, be a side yard. The plaintiffs claim that this is a rear yard and that there is a twenty-foot requirement. It is their position that since the site plan calls for four buildings on the land, each building must have its own front, rear and side yards, determined, not by the existence of city streets, but by the location of each building on the parcel. The regulations contain the following definitions: A front yard is "an open space extending across the full width of the lot between the front wall of the principal building and the front lot line." § 104 (30). A rear yard is "an open space extending across the full width of the lot, between the rear wall of the principal building and the rear lot line." § 104 (32). A side yard is "an open space extending from the front to the rear yard, between the prin-

cipal building and the side line of the lot." § 104 (31). A lot is "a parcel of land occupied or to be occupied by a building or group of buildings and accessory buildings and including such open spaces as are required." § 104 (17). From these definitions it appears that the property in question constitutes a lot and that this lot is to have one front yard and one rear yard. The contention of the plaintiffs that each of the buildings on the lot must have its own front, rear and side yards is not supported by the regulation. It remains to be determined what part of the lot is the front. In interpreting the language of the regulations, our function is to determine the expressed legislative intent. *Schwab* v. *Zoning Board of Appeals,* 154 Conn. 479, 482, 226 A.2d 506; *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 682, 136 A.2d 785. In construing the meaning of a term, the enactment should be examined in its entirety and its parts reconciled so that a term has a consistent meaning throughout. *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 557, 235 A.2d 643; *Garbaty* v. *Norwalk Jewish Center, Inc.,* 148 Conn. 376, 382, 171 A.2d 197. The front part of a lot is referred to in the regulations. Section 104 (18) defines a corner lot as one "fronting on two or more streets" and § 303 provides that buildings on a corner lot "shall be required to comply with the set back line on only one street front." In these regulations it seems clear that "front" refers only to the street side of the lot bordering Mountain Avenue and that the portion of the premises bordering the plaintiffs' property is a side yard. The conclusion of the trial court that the site plan satisfied the side-yard requirement of the regulations cannot be disturbed.

The plaintiffs claim that the site plan fails to pro-

vide for appropriate traffic circulation and access. The commission gave consideration to the traffic problem, in fact, one of the reasons for the denial of approval when the site plan was before the commission on a prior occasion in September, 1969, was because of safety problems regarding fire protection and snow removal due to the layout of the access road and the parking lot. The revised site plan contained an enlarged turn-around radius to accommodate fire- and snow-removal equipment. The burden of proving that the commission acted arbitrarily, illegally or in abuse of its discretion is on the plaintiffs. *Rocchi* v. *Zoning Board of Appeals,* 157 Conn. 106, 110, 248 A.2d 922; *Hawkes* v. *Town Plan & Zoning Commission,* 156 Conn. 207, 211, 240 A.2d 914. The plaintiffs point to no facts which would tend to show in what way circulation and traffic are impeded by the site plan. The commission did not abuse its discretion in this respect.

The plaintiffs also claim that the commission's approval of the drainage provisions of the site plan is arbitrary and in abuse of its discretion in that it permits occasional flooding of the parking lot and establishes drainage conditions detrimental to adjacent properties. A great deal of testimony was introduced before the commission at the public hearing in relation to the drainage problem. The evidence indicates that the parking lot is susceptible to flooding when the brook located on the western boundary of the subject plan is at flood level. The appropriate way to avoid flooding of the parking area is by filling it. The water resources commission did not authorize this, because it would increase flooding downstream. It required that the parking lot be maintained no higher than its present level so that its water-holding capacity will not be re-

duced. The site plan calls for a lowering of from two to three feet of the area where the parking lot is located but the plaintiffs have not demonstrated that this will create such a change in drainage conditions that surrounding properties will be adversely affected. The commission, in its executive session, found that if flooding did occur in the parking area those cars which might be located there could be temporarily parked along the drive which is twenty-six feet wide and which could accommodate parking on a temporary basis. Both the army corps of engineers and the water resources commission approved the drainage provisions of the site plan and there was no abuse of discretion on the part of the commission.

Section 210 (D) (6) of the regulations requires that the commission consider "[s]afeguards to protect adjacent property, and the neighborhood in general, from detriment" when acting on a proposed site plan. The plaintiffs claim that the site plan does not provide for protection of certain trees located on their property which have branches and roots extending onto the subject land, and that under the provisions of § 210 (D) (6) the commission should have required safeguards for the trees. Where trees are located on the property of one party and their roots or branches extend onto the property of a second party, the latter may lop off the branches or roots up to the line of his land. *Robinson* v. *Clapp,* 65 Conn. 365, 377, 32 A. 939. We find nothing in the zoning regulations abrogating this right. This does not mean, of course, that complete disregard for the welfare of the trees is permitted. The site plan requires very little change in grade along the side yard of the subject land parallel to the trees in question. There was evidence before

the commission that the defendant developers were concerned with preserving the trees and were going to give careful consideration to root structures. The plaintiffs have offered no evidence to show how the site plan will damage the trees. They ask safeguards for dangers which they cannot identify.

The commission approved the site plan "with the provision that every effort be made to obtain permission from the Water Resources Commission to fill the parking area to a level which would make it less susceptible to flooding." Section 210 (E) of the regulations requires that the commission, "after public hearing . . . approve, disapprove, or approve with modifications the proposed area." The proviso attached to the approval by the commission is not a condition nor does it render the meaning of its decision vague and ambiguous and, therefore, invalid. It is merely the expression of a hope that at some future time the water resources commission will permit the owners of the property to fill the parking area to a level which would make it less susceptible to flooding.

The plaintiffs also contend that they were deprived of "due process and a fair hearing" because of the participation of Dennis Brown, the planning consultant of the commission, in the deliberations on the site plan. Brown was a consultant both to the commission and the town and in the latter capacity had worked with the redevelopment agency on the housing for the elderly project in question. He spoke five times at the first public hearing on the site plan, on July 24, 1969. On four occasions he gave short direct answers to questions from the commission or the plaintiffs' attorney, and once he made comments advocating the desirability of locating the project on the site in question. He also spoke

at two other meetings, one on September 11, 1969, the other on October 23, 1969, which were held to decide on the disposition of the application in question. At the meeting on September 11, 1969, Brown said that the site plan met the requirements of the regulations and recommended approval. The commission at that time rejected Brown's advice and denied approval because of traffic circulation problems.

The proceedings before the commission are informal. *McMahon* v. *Board of Zoning Appeals,* 140 Conn. 433, 435, 101 A.2d 284; *Saporiti* v. *Zoning Board of Appeals,* 137 Conn. 478, 482, 78 A.2d 741. "The only requirement is that the conduct of the hearing shall not violate the fundamentals of natural justice." *Miklus* v. *Zoning Board of Appeals,* 154 Conn. 399, 406, 255 A.2d 637. In passing on the site plan in the present case the commission was acting in its administrative capacity. The fact that Brown acted as a consultant for the commission and advocated the cause of the applicant does not in itself indicate that the plaintiffs were not given a fair hearing. He was a mere technical adviser to the commission. Because the commission is composed of laymen it is entitled to professional technical assistance in carrying out its responsibilities. *Yurdin* v. *Town Plan & Zoning Commission,* 145 Conn. 416, 421, 143 A.2d 639, cert. denied, 358 U.S. 894, 79 S. Ct. 155, 3 L. Ed. 2d 121; see *Hawkes* v. *Town Plan & Zoning Commission,* 156 Conn. 207, 212, 240 A.2d 914. The presence of Brown in the executive session of the commission is not fully explained. The plaintiffs were aware of this at the time of the trial but made no effort to offer evidence to determine what, if anything, Brown said or did at that executive session. It was the right of the plaintiffs, if they

saw fit, to offer evidence in the court below in order to determine what, if any, effect Brown's presence at the executive session might have had on the decision of the commission. *Kyser* v. *Zoning Board of Appeals,* 155 Conn. 236, 249, 230 A.2d 595. No such effort was made and no evidence concerning this was introduced. The plaintiffs had a full opportunity to meet the issues with which they were confronted. There was no evidence that Brown had any personal or business interest in the matter. There is no showing of error or prejudice that would constitute a denial of due process. It cannot be said that the action of the commission in this regard was illegal, arbitrary or in abuse of the discretion vested in it, as claimed by the plaintiffs. *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 676, 236 A.2d 917.

The claim that the commission acted illegally, arbitrarily or in abuse of its discretion is not supported by the record in this case. The commission had numerous problems to determine in the approval of the site plan and gave careful consideration to them. Courts do not substitute their own judgment for that of the commission so long as honest judgment has been reasonably and fully exercised after a full hearing. *Young* v. *Town Planning & Zoning Commission,* 151 Conn. 235, 245, 196 A.2d 427; *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* 150 Conn. 672, 677, 192 A.2d 886. The plaintiffs failed to establish that the commission acted illegally, arbitrarily or in abuse of its discretion.

There is no error.

In this opinion the other judges concurred.