[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Janet M. Creaturo (hereinafter "Creaturo") appeals from the approval of a subdivision application. The defendants are the Town of Stonington Planning Zoning Commission (hereinafter "PZC") and Barnes Hill Realty, Inc. (hereinafter "Barnes"). On July 1, 1988, Barnes conveyed 8.8 acres of land in North Stonington to Creaturo. On the same day, Barnes and Creaturo entered into an agreement concerning the subject property. (Return of Record [ROR], Exhibit II/A). The following provisions of the agreement are relevant to this appeal:
 Whereas the parties are desirous of transferring a certain parcel of real estate more particularly described on Exhibit "A"[1] attached hereto consisting of approximately 80,228.12 square feet of land with the buildings and improvements thereon in accordance with the terms of a certain purchase and sale agreement between the parties regarding the CT Page 6183 same; and
 Whereas, the seller[2] is the owner of additional property adjoining said parcel and is not legally able to convey the property described on Exhibit "A" as a separate parcel until subdivision approval is obtained from the appropriate authorities of the Town of Stonington, the parties hereby agree as follows:
 1. Seller shall convey of even date herewith the property described on Exhibit "A" by good and sufficient warranty deed as shall be necessary to transfer said property. . . .
 2. Buyer shall execute simultaneously with the execution of this Agreement a quitclaim deed back to the seller of all the land conveyed to her with the exception of the property described on Exhibit "A", and said deed shall be placed in the hands of Jackson T. King, Jr. as Escrow Agent to be held in accordance with the terms of this Agreement.
 3. As soon as subdivision approval is obtained from the Town of Stonington for the division of the property described on Exhibit "A" from the remaining land, said escrow agent shall record said deed and said property shall be conveyed from Buyer back to Seller in accordance with the terms thereof.
 4. Buyer agrees that she will cooperate in all reasonable respects with Seller in obtaining said subdivision approval, and she appoints Seller or his attorney as CT Page 6184 her agent-in-fact to execute any and all applications or similar documents that may be necessary to obtain such approval. . . .
. . .
 6. Buyer (sic) reserves the right to enter into possession of all the property described on Exhibit "B", not including the property described in Exhibit "A" for the purposes of surveying, testing or taking whatever other steps the Buyer may deem necessary and appropriate regarding the approval and development of said property.
(ROR, Exhibit II/A). The following assignment provision appears at the bottom of the last page of the agreement:
 The undersigned Barnes Hill Realty, Inc. hereby assigns to Steven Woods all of its right, title and interest in and to the above agreement and appoints Steven Woods individually to apply for any and all approvals pursuant to the terms of this agreement.[3]
(ROR, Exhibit II/A).
On November 1, 1991, Woods applied to the Inland Wetlands Commission and the PZC for a two-lot subdivision. (ROR, Exhibit I/A). The application lists the name of the applicant as "Barnes Hill Realty Co." and it notes that the applicant "is not the owner of record but has been legally authorized to act as agent for the owner of record." (ROR, Exhibit I/A). Woods' signature appears in the space for "applicant." Woods' signature along with the caption "for Barnes Hill Realty" also appears in the space for "agent." The proposed resubdivision would create two lots, one approximately 1.8 acres and the other approximately 7.0 acres. (ROR, Exhibit I/A). A public hearing was held on the application on December 17, 1991. The application was CT Page 6185 generally discussed and several town agencies commented, including the Stonington Conservation Commission and the Fire District. (ROR, Exhibit I/F). The parties' agreement was also presented to the PZC at the December 17, 1991 meeting. On February 6, 1992, the application was approved at a special PZC meeting with four conditions, only the first of which is relevant to this appeal, which provides:
 That the open space area of the resubdivision[4] be deeded to the owners of lots one and two, as voted by the commission on October 15, 1991.
(ROR, Exhibit I/I).
Notice of the approval was published on February 14, 1992. (ROR, Exhibits I/C). The plaintiff timely served the defendant of her appeal through its chairman and the town clerk of the Town of Stonington on February 28, 1992.[5]
Creaturo raises two issues in her appeal:
 (1) Whether Steven Woods was authorized to act as her agent in pursuing the subdivision application; and
 (2) Whether the PZC violated its own subdivision regulations by providing that the open space be deeded to the two lot owners.
As to the issue of Woods' agency, Creaturo argues that she gave notice to the PZC by letter dated March 5, 1990 to the town planning director, Mr. Robert Birmingham, that she terminated Woods' authority to act as her agent. The letter is attached to the plaintiff's memorandum of law and reads:
 This is to advise you that I am not in agreement to the modification of the subdivision plan showing (illegible) configured lots to be submitted by Steven Woods. CT Page 6186
 Please be advised that although Mr. Woods acted as an applicant to the first plan he is not authorized to act as my applicant on any other modification or submission.
(Pleadings, Plaintiff's memorandum of law, Exhibit B.)
Creaturo argues that this letter gave notice to the PZC that Woods was no longer Creaturo's agent for purposes of the subdivision application. Therefore, the plaintiff argues, any action taken by the PZC on the application should be voided because the applicant Woods was not properly before the PZC.
As to the open space issue, Creaturo cites to the Stonington Subdivision Regulations (hereinafter "regulations") Chapter IX, 9.7 which states:
 The [PZC] shall require that any space created by this chapter be placed in permanent open space ownership situation by fee transfer and proper development restrictions to the Town of Stonington, a recognized land trust, a homeowners association or existing fire district. (emphasis added).[6]
Creaturo also argues that the PZC violated its own regulations because the owners of the two lots in the subdivision to whom the open space thereon was to be deeded, are not among the grantees listed in the regulations who are eligible to acquire and hold open space. Creaturo argues therefore that the PZC's decision to approve the application is contrary to its own regulations and should be reversed on appeal.
The defendants PZC and Barnes filed a joint brief in the appeal in which they first argue that any exhibits attached to the plaintiff's brief are not part of the return of record and therefore are not properly before the court for its consideration. Specifically, they argue that the letter in which Creaturo purports to terminate Woods' agency was not CT Page 6187 before the PZC when the application was decided upon and therefore, pursuant to General Statutes 8-8(i)[7] is not part of the return of record to be considered by the court in this appeal.
The defendants also argue that even if the court were to consider the letter on appeal, Woods' agency was not terminated by the letter so as to affect the validity of the subdivision application. The defendants argue that Woods' agency (or subagency) as created in the agreement, was coupled with Barnes' present and future interest in the property sought to be subdivided, and therefore, cannot be unilaterally revoked by Creaturo (the principal). The defendants further argue that Barnes had a sufficient interest in the property to be an applicant for a subdivision before the PZC regardless of the vitality of Woods' agency. Specifically, the defendants argue that Barnes had a present possessory interest in the property pursuant to paragraph six of the agreement set forth above.
Also, the defendants argue that Barnes maintained a future interest in the property pursuant to paragraphs two and three of the agreement. Based on these provisions, the defendants argue that Barnes had sufficient interest in the property by reason of its control and right to present or future possession therein, and thus had standing to apply to the PZC for subdivision of the property.
As to the issue of the deed of open space, the defendants argue that the PZC's decision to condition the subdivision approval on the dedication of open space to the lot owners was reasonably supported by the record and was within its discretion because the condition accomplishes the "spirit and intent" of the subdivision regulations' open space requirements. The defendants also note that the two lot owners to whom the open space will be deeded are not precluded from forming a homeowners' association to control and maintain the open space.
I. Aggrievement
On April 16, 1993, counsel for all parties stipulated in writing that Creaturo at all times relevant herein, was and is the owner of property subject to the PZC's decision. Counsel also waived oral argument on the appeal. CT Page 6188 Accordingly, the court finds that the plaintiff is statutorily aggrieved and thus this case is properly before the court.
The court now turns to the issues raised in this appeal.
II. Revocation of the Agency
A.
The letter plaintiff relies on to revoke the agency was annexed as Exhibit B to plaintiff's brief. It was dated March 5, 1990 and referred to Woods as the applicant, and purported to revoke or deny any authority that Woods had to act as applicant on the plaintiff's behalf. Although the letter was addressed to the town planner and received by him on March 8, 1990, it is unknown from the record why the letter was not brought to the attention of the PZC or why it was not made part of the record. Significantly, the plaintiff, who was the owner of one of the lots in the proposed resubdivision and who had notice of the hearings thereon, failed to bring her purported revocation of Woods' agency to the attention of the PZC at any of the hearings which were held on December 17, 1991, January 2, 1992, January 21, 1992 and February 6, 1992. The court could find no reference to plaintiff's letter or purported change of position as to the applicant's authority in the record, and plaintiff has not pointed to any.[8] As the letter was not part of the record before the PZC, the PZC was unable to consider it, and the plaintiff's claim that she revoked Woods' authority to act for her as applicant must fail.
In this appeal, the plaintiff made no effort to correct or supplement the record pursuant to the provisions of General Statutes 8-8(i) and (k). The burden of ensuring that a record is sufficient for review falls upon the party bringing the claim on appeal. Niles v. Niles, 9 Conn. App. 240,249 (1986). Therefore, the plaintiff's claim that the letter revoked Woods' authority to act for her is not properly before the court.
B.
Even if, however, the letter is considered by this CT Page 6189 court on appeal, this does not help the plaintiff.
An agency agreement coupled with an interest is not revocable by the principal. Long v. Schull, 184 Conn. 252,256 (1981).
 In order that a power may be irrevocable because coupled with an interest, it is necessary that the interest be in the subject matter of the power and not in the proceeds which will arise from the exercise of the power. In other words, the person clothed with the power must derive under the instrument creating it or from the nature of the relationship, a present or future interest in the thing or subject itself on which the power is to be exercised, and not merely that which is provided by the exercise of the power.
 Whether an interest which will make an agency or power irrevocable exists in a particular case is to be determined from the entire agreement between the parties and from the facts and circumstances attending the relationship existing between the parties.
3 Am.Jur.2d Agency, 65 (1986).
In this case, the agreement between the parties shows that Barnes, acting through Woods, or Woods, personally, had a present and future interest in the subject of the agency, namely the property which was to be subdivided. The clauses in the agreement and the deeds executed and delivered in escrow creating that interest are set forth above. The agreement names Barnes as the agent of Creaturo "to execute and all applications or similar documents that may be necessary to obtain [subdivision] approval. . . ." This grant of agency was preceded by the transaction described in the agreement wherein Barnes CT Page 6190 conveyed the subject property to Creaturo who then placed a quitclaim deed in escrow. The terms of the deed purportedly transferred the larger portion of the subject property back to Barnes. The escrow agreement required the quitclaim deed to be released to Barnes upon the successful completion of the subdivision process. A fair reading of the agreement shows that Barnes reserved "the right to enter into possession of all the property described in Exhibit A for the purposes of surveying, testing or taking whatever other steps the Buyer (sic) may deem necessary and appropriate regarding the approval and development of said property." It is evident that the terms of this agreement gave Barnes an interest in the subject of the agency. Therefore, even if the letter referring to the revocation of Woods' agency may be read as directed to the agency of Barnes, its agency could not be unilaterally revocable by Creaturo. Her letter purporting to do so would not be sufficient to revoke Barnes' agency under the circumstances of the instant case. Woods, as an agent of the owner of the subject property and the holder of an interest in the subject property, was a proper applicant before the PZC. The court concludes that the action of the PZC was reasonably supported by the evidence in the record, and the PZC did not act arbitrarily, illegally or in abuse of its discretion in approving this two-lot resubdivision.
III. The Condition that the Open-Space be Deeded to the Lot Owners
The plaintiff bears the burden of proof to demonstrate that the board acted improperly. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707 (1988). "Conclusions reached by [a local board] must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Primerica v. Planning Zoning Commission, 211 Conn. 85, 96 (1989).
 Generally, it is the function of a zoning board or commission to decide "within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given CT Page 6191 situation and the manner in which it does apply. The trial court [has] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." (citations omitted).
Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152
(1988). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." Spero v. Zoning Board of Appeals, 217 Conn. 435, 440 (1991).
In disposing of an application for a subdivision, the commission acts in an administrative capacity. J M Realty Co. v. Norwalk, 156 Conn. 185, 190 (1956). In reviewing and deciding a subdivision application, the commission is controlled by the regulations which it had previously adopted. Westport v. Norwalk, 167 Conn. 151, 155,157 (1974), And, when a subdivision application meets the existing regulations, as here, the commission must approve the application. R. K. Development v. Norwalk, 156 Conn. 369
(1968).
The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts. Baron v. Planning and Zoning Commission, 22 Conn. App. 255, 257
(1990).
The trial court may sustain the plaintiff's appeal only upon a determination that the decision of the commission was unreasonable; arbitrary or illegal (citations omitted). "It must not substitute its judgment for that of the commission and must not disturb decisions of local commissions as long as honest judgment has been reasonably and fairly exercised." Baron, supra, 257.
Subdivision regulations 9.7 provides:
 The [PZC] shall require that any open space created by this chapter be placed in permanent open space CT Page 6192 ownership situation by fee transfer and proper development restrictions to the Town of Stonington, a recognized land trust, a homeowners association or existing fire district.
The subdivision application was approved with the condition that the open space designated be deeded to the two owners of the subdivided lots. These owners are not among the eligible recipients of open space set forth in the regulations. At the public hearing on the application, Barnes' attorney noted that:
 The open space issue had been looked at and can be resolved by keeping it within the two property owners that will ultimately be there. of course, it creates quite a bit of open space frontage right along Farmholme Road.
(ROR, Exhibit I/N, p. 7). The transcript also notes that Barnes' attorney read into the record a letter by the PZC chair to him that reads:
 Thank you for your letter of August 14, concerning the deeding of open space in connection with [this]. . . application. At its October 15th meeting, the PZC agreed that the open space should be deeded to the property owners and not be conveyed to the town of Stonington.[9]
(ROR, Exhibit I/N, p. 6). Also in the record is a comment sheet submitted to the PZC by the chair of the town conservation commission, which noted that the application "appears to meet all the open space requirements." (ROR, Exhibit I/D).
The PZC must construe applicable regulations within the fair import of their language. Double I Limited Partnership v. Planning and Zoning Commission, 218 Conn. 65,72 (1991). Presumably, the requirements for permanent dedication of open space were enacted to insure that where CT Page 6193 open space is required for a subdivision, it will be maintained as such. It is clear that the open space condition imposed by the PZC does not impair the spirit and intent of the open space provisions.
It also appears that the deviation from the regulation was induced by the applicant's attorney, who at that time, was acting for both the plaintiff and the defendant Barnes. The court concludes that the PZC acted within its discretion in modifying this condition to the subdivision approval. The record shows that the PZC reasonably considered the issue. It is evident that given the size of the subdivision (two lots) and the fact that conveyance of the open space to a homeowners' association or to the Town of Stonington is not precluded, the PZC's decision does not substantially alter the subdivision regulations or impugn their integrity and is consistent therewith. "[C]ourts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their action." Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554, 573 (1988). The modification of the condition that the area dedicated as open space be deeded to the two lot owners of a two lot subdivision is just such a trivial and technical infirmity in the action of the PZC which under these circumstances the court cannot find arbitrary, unreasonable or illegal. Rather, it was the result of honest judgment reasonably and fairly exercised and, from the record, induced by the applicant's attorney who was acting not only for himself but for the plaintiff. The plaintiff cannot complain of this now.
The appeal is dismissed.
Teller, J.